UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10807-RGS

EVERGREEN PARTNERING GROUP, INC.

v.

PACTIV CORP.; GENPAK, LLC;
DOLCO PACKAGING CORP.; SOLO CUP CO.;
DART CONTAINER CORP.;
and AMERICAN CHEMISTRY COUNCIL

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM AS TO COUNT III OF THE
SECOND AMENDED COMPLAINT

January 28, 2014

STEARNS, D.J.

Defendants collectively move to dismiss Count III of the Second Amended Complaint (SAC), which alleges violations of Mass. Gen. Laws ch. 93A (Chapter 93A), on jurisdictional grounds, namely, that the actions and transactions alleged in the SAC did not occur "primarily and substantially" within the Commonwealth of Massachusetts.[1]   Plaintiff Evergreen assumes an agnostic stance, recommending that the court delay a decision on

_____

[1] Defendant Genpak, LLC, separately moved to dismiss the SAC (Dkt #139) on, among other grounds, the alleged jurisdictional deficiency of the Count III Chapter 93A claim.

1

defendants' motion to dismiss until after the close of discovery.   For the reasons to be explained, the court will dismiss Count III of the SAC without prejudice.[2]

## PROCEDURAL BACKGROUND

The SAC is the third iteration of the Complaint in this case.   On May 9, 2011, Evergreen and Michael Forrest (its former President and sole shareholder), acting without legal representation, filed the original Complaint.   Counsel subsequently retained by plaintiffs entered and then withdrew their appearances.   In granting the motion to withdraw, the court noted that Evergreen, as a corporation, lacked the legal capacity to represent itself.   The court allowed Evergreen thirty days to obtain successor counsel.

Attorney Robert Bonsignore, in due course, entered an appearance and filed a First Amended Complaint on August 19, 2011.   On October 6, 2011, Bonsignore moved to withdraw as plaintiffs' counsel.   In granting the motion, the court again allowed Evergreen thirty days to engage new counsel.   On December 1, 2011, after Evergreen failed to comply with the

---

[2] It will be open to Evergreen to file a Third Amended Complaint should it eventually succeed in convincing the court that discovery has unearthed jurisdictional facts that could not have been known when Evergreen/Forrest filed the SAC.

court's order, the court dismissed the lawsuit without prejudice, noting that Forrest, in his personal capacity, lacked standing to prosecute claims for damages that were alleged to have been uniquely incurred by Evergreen.

In January of 2012, Evergreen/Forrest retained a new set of attorneys.   The court agreed to reopen the case, and granted leave to file the SAC.   The court then granted defendants' motion to dismiss the SAC for failure to plead sufficient plausible facts to support a prima facie claim of a violation of the antitrust laws.   *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). On June 19, 2013, the First Circuit reversed this court's decision and remanded the case for further proceedings.   *See Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33 (1st Cir. 2013).   The First Circuit pertinently noted that "[s]ince the district court summarily dismissed Evergreen's Massachusetts Chapter 93A claim because it 'fail[ed] for the same reasons that the Sherman Act claim fails,' we remand for the district court to reconsider this issue consistent with the strictures of this opinion."   *Id.* at 51.

## FACTS

The First Circuit's opinion and previous opinions issued by this court set out the factual background of this case in a level of detail that need not

be repeated here.   The court will confine itself to the facts pertinent to the issue of whether the SAC sets out sufficient facts to surpass the threshold of the "primarily and substantially" jurisdictional requirement of Chapter 93A.[3]

## MATERIAL FACTS

- Evergreen was incorporated in and maintained its principal place of business in Massachusetts.

- Evergreen operated a plant in Norcross, Georgia.

- The six defendants are incorporated in or organized under the laws of Delaware, New York, Michigan, and New Jersey and have their principal places of business in Illinois, New York, Michigan, and New Jersey.

- Michael Forrest, through Evergreen, pioneered a business model based on the recycling of polystyrene food service products through the use of a post-consumer polystyrene resin (PC-PSR).

---

[3] In the context of a motion to dismiss, a plaintiff's plausible factual allegations are deemed to be true.   *See Twombly*, 550 U.S. at 555-556; *see also Evergreen*, 720 F.3d at 45 (noting that, in this context, a court must "make all reasonable inferences in favor of the plaintiff").   Here, the relevant actions and transactions are those that are alleged to have taken place during the applicable four-year Chapter 93A statute of limitations (that is, those occurring after May 7, 2007).

- The five producer defendants control 90 percent of the polystyrene foam (Styrofoam) market.

- The success of Evergreen's business model depended on the cooperation of at least one of the producer defendants in order to meet the volume demands of Evergreen's potential customers.

- Instead, the producer defendants, acting through their trade association, defendant American Chemistry Council (ACC), conspired to boycott Evergreen and to engage in a covert "publicity war" denigrating Evergreen's PC-PSR recycling method.

- All of the producer defendants are members of the Plastics Food Service Packaging Group (PFPG), a subsidary of the ACC.

- The conspiracy originated in 2005 or 2006, at a meeting of the PFPG, and Evergreen has not alleged that this meeting occurred in Massachusetts.

- As a result of defendants' boycott, Evergreen could not find a polystyrene producer able to "meet the national demand of the bulk consumers" that its business model required. *Evergreen*, 720 F.3d at 38.

- Between 2007 and 2009, defendants deliberately withheld positive

information about the success of Evergreen's recycling programs, promoted a sham competitor, and disseminated false information about the cost-effectiveness of Evergreen's closed-loop recycling process. *Id.* at 40.

- Sometime between 2006 and 2008, Genpak's President, Jim Reilly, told Forrest that "Genpak had no interest in competing against Pactiv in large schools." Compl. ¶ 44.

- Reilly further "indicated that he would embrace Evergreen's closed-loop program only if another PFPG member agreed to be involved as well." *Id.*

- Sometime during this same period, the CEO of Dolco telephoned Forrest at an unspecified location and rescinded an agreement to assist Evergreen in producing a full line of Evergreen Poly-Sty-Recycle products for national distributors.

- In 2007, Pactiv successfully undermined Evergreen's attempt to supply Poly-Sty-Recycle products to the Chicago Public Schools, and, as a result, "the closed-loop model was prescribed [to fail]." Compl. ¶ 37.

- In 2007, Evergreen found a California investor who was willing to

provide $10 million to upgrade Evergreen's Georgia operations and establish nine additional "school-to-career" closed-loop recycling sites, among them the Los Angeles Unified School District, if one of the producer defendants would embrace Evergreen's business model.

- In May of 2007, the PFPG rejected Evergreen's request for funding to support the California recycling initiative.

- In 2007, Evergreen procured a distribution agreement with Southeastern Paper Group "to service Florida, Georgia, South Carolina and North Carolina schools," but Pactiv and Genpak "refused to work with Southeastern Paper Group and implement Evergreen's closed-loop method."   Compl. ¶ 38.

- In late 2007, Genpak sabotaged Evergreen's pilot program in the Pasco County, Florida schools by converting the school system's white trays to black trays, rendering Evergreen's recycled resin "unsalable." *Id.* ¶ 45.

- In 2008, Evergreen secured recycling contracts with the Newton County school system in Georgia, the Pasco County school system in Florida, and, on a pilot basis, with schools in Miami-Dade County,

Florida.[4]

- In 2008, Evergreen reached commitments with the Atlanta Public School system, Georgia Tech University, and two governmental office cafeterias in Atlanta.

- School districts in California, New York, North Carolina, South Carolina, and Maryland also "expressed keen interest in Evergreen and its recycling program."   Compl.¶ 26.

- In 2007 or 2008, Ray Ehrlich of Dart, in association with the director of the PFPG, wrote an article for the Washington-based ACC website entitled "Economic Realities of Recycling" that neither mentioned Evergreen's successes in Boston, Providence, and Gwinnett and DeKalb counties, Georgia, nor the growing demand for Evergreen's recycling services around the country.

- The article stated that "[i]n the future, we will continue to see an absence of polystyrene food service recycling programs, because in business, economics rule over emotion."   Compl. ¶ 40.

---

[4] The dates of the events involving the Pasco County School District are taken directly from paragraphs 26 and 45 of the Complaint, although the chronology is puzzling.  Paragraph 26 of the Complaint states that Evergreen secured a contract with the Pasco County schools in 2008, but Paragraph 45 of the Complaint states that Genpak sabotaged Evergreen's pilot program with the Pasco County schools in late 2007.

- During this period, some of defendants' executives used the internet, e-mails, and an ACC-funded publication, "Plastic News," to promote Packaging Development Resource (PDR), a purported competitor of Evergreen.   *Id.* ¶ 50.

- Communications touting PDR were sent "at least to Eastern Bag & Paper, Gwinnet County Public Schools, Atlanta Public Schools, Southeastern Paper, Dade Paper, Miami Dade Unified Schools, DeKalb Public Schools, South Carolina School Alliance, New York Public Schools, [and] Los Angeles Unified."   *Id.*

- A Pactiv executive stated in an email to a Gwinnett County school official that Evergreen's PC-PSR was "more expensive" than virgin resin and "created problems with production."   *Id.* ¶ 53.

- Evergreen ceased its operations in December of 2009.

## DISCUSSION

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."   Mass Gen. Laws ch. 93A, § 2(a).   To maintain a Chapter 93A action "the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice" must have "occurred primarily and substantially within the

commonwealth." *Id.* § 11.   An action under Chapter 93A must be brought within four years of an alleged violation.   The Complaint in this case was filed on May 7, 2011.   Thus, only deceptive or unfair practices alleged to have occurred after May 7, 2007, are relevant to the present motion to dismiss.

Evergreen sets out its Chapter 93A claim in paragraphs 71 - 75 of the SAC.   After incorporating by reference the factual allegations contained in the SAC, and alleging that defendants conduct trade and commerce in the Commonwealth of Massachusetts, Evergreen simply states that defendants "violated [Chapter] 93A."   Compl. ¶¶ 71-73.   Evergreen then asserts, without further elaboration, that "[t]he acts described herein occurred primarily and substantially within the Commonwealth because Defendants committed injurious acts within the Commonwealth, Evergreen is located in the Commonwealth, and Evergreen was injured in the Commonwealth." *Id.* ¶ 74.   Count III does not detail any further *specific* factual allegations occurring in, or related to, Massachusetts.

Had Evergreen alleged in paragraphs 1 - 70 of the SAC material acts or transactions occurring in Massachusetts, then its failure to do so in Count III might not be fatal to its Chapter 93A claim.   But, as Evergreen

acknowledges in the introductory venue paragraph of the SAC, the most charitable reading possible is that "*some* of the unlawful acts alleged herein were performed and occurred in material part within this District." (Compl. ¶ 6) (emphasis added).   This is not enough.   The applicable standard is not "some acts," but rather, whether in their totality, the facts establish that "the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth."   *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 472-473 (2003).

It is true, as Evergreen maintains, that to defeat the Chapter 93A jurisdictional predicate, a defendant bears the burden of showing that the bulk of its alleged transgressions occurred primarily and substantially outside of Massachusetts.   *See Roche v. The Royal Bank of Canada*, 109 F.3d 820 (1st Cir. 1997).   In discharging this burden, defendants make the compelling point that the SAC, in over thirty pages and seventy-five paragraphs, barely mentions Massachusetts, and when it does, fails to identify a single deceptive act or practice or "dominant event" that is alleged to have occurred in Massachusetts.   As defendants note, Evergreen's only functioning commercial facility was located in Norcross, Georgia, and the brunt of the acts that Evergreen identifies as having been

anticompetitive are alleged to have been felt primarily in the southeastern United States (Georgia, North Carolina, South Carolina and Florida), and in California.

In response, Evergreen says little more than that its Chapter 93A claim is "primarily derivative of the Sherman Act claim" (with the exception of some false statements allegedly made by defendants).[5]   Hr'g Tr., 27:12-13, Nov. 1, 2013.   When asked at oral argument to respond specifically to defendants' "primarily and substantially" argument, counsel stated that Evergreen would rely on its briefs as submitted.   *Id.*, 29:8-14. However, Evergreen's one pertinent brief (Dkt # 154), simply refers the court to the factual recitation in the First Circuit's opinion, then alleges that Evergreen does business and was injured in the Commonwealth, and states, "that is all that is required."   Dkt #154 at 5.   Evergreen concludes with the argument that "whether a series of actions and transactions occurs 'primarily and substantially' in Massachusetts is a factually intensive inquiry that is inappropriate for resolution on a motion to dismiss."   *Id.* at 2.[6]

---

[5] The purported false statements are not alleged to have been made in Massachusetts or made to someone in Massachusetts.

[6] Wandering a few degrees off topic, Evergreen offers the facts that:

As fact-intensive as the issue may be, whether a defendant's actions and transactions occurred primarily and substantially in Massachusetts for purposes of Chapter 93A jurisdiction is unquestionably a matter of law. *Campagnie de Reassurance d'Ile de France v. New Eng. Reinsurance Corp.*, 57 F.3d 56, 90 (1st Cir. 1995); s*ee also Greg Beeche Logistics, LLC v. Skanska USA Bldg., Inc.*, 2013 WL 5550673, at *3 (D. Mass. Sep. 23, 2013) (dismissing a Chapter 93A claim with prejudice, noting that "where there is no allegation that any unfair or deceptive acts occurred primarily and substantially within Massachusetts," a plaintiff "has failed to allege a plausible basis for this claim").

The twin difficulty for Evergreen is, on the one hand, its inability to summons up a cluster of facts that might in their totality pin the center of gravity of the Chapter 93A claim in Massachusetts and, on the other, its concomitant inability to point to a dominant event that occurred within the

---

(1) it developed its business plan in Massachusetts; (2) filed for its patent in Massachusetts (though the patent filing occurred well before the relevant time period, and is not alleged to have been the object of any deceptive act or practice by defendants); (3) paid taxes in Massachusetts; and (4) wound down its business in Massachusetts.  Evergreen finally states that it "contracted and negotiated" with defendants and others in Massachusetts. This "factual" recitation appears to confuse the "minimum contacts" and "transacting business" tests of the Massachusetts Long-Arm Statute with Chapter 93A's "primarily and substantially" jurisdictional test.

orbit of Massachusetts.   The seminal dominant event underlying the SAC, as the First Circuit noted, was the hatching of the alleged antitrust conspiracy at the 2005 - 2006 meeting of the PFPG.   *See Evergreen*, 720 F.3d at 47.   Evergreen does not allege that the meeting occurred in Massachusetts, and neither the PFPG nor its parent organization, the ACC, are headquartered or incorporated in Massachusetts.   There are only two paragraphs that Evergreen can point to in the SAC that reference actions or transactions occurring in Massachusetts.   The first instance, Paragraph 33, describes an event that lies outside the statute of limitations (and precedes the inception of the alleged conspiracy) — it complains of Pactiv's and Genpak's refusal to partner with Evergreen in 2002 in a recycling program involving the Boston public schools.   (In any event, Evergreen successfully enlisted another company in the Boston schools project and alleges no resulting harm from defendants' then refusal to cooperate).   The second instance, Paragraph 47, details an interaction between Solo and a school supply distributor at some unspecified time.   Evergreen alleges that Solo's President and CEO told the President of Eastern Bag & Paper Company that "he had been told by his people not to work with Evergreen or Michael Forrest."   Even assuming that the statement post-dated May 7, 2007, and

14

was in some way related to the alleged conspiratorial plotting at the 2005-2006 PFPG meeting, and even further assuming that it was made in Massachusetts, a hearsay conversation that is not itself alleged to have resulted in any harm to Evergreen in Massachusetts can hardly be said to qualify as a "dominant event."[7]

The final arrow in Evergreen's quiver is the argument that it ultimately suffered financial losses in Massachusetts where its corporate headquarters were located.   The short answer is that "[t]he alleged place of injury or loss does not necessarily determine the question . . . unless some deceptive or unfair conduct *also* occurred in Massachusetts." *Welch Foods, Inc. v. Liberty Mut. Fire Ins. Co.*, 2005 WL 1131747, at *26 (Mass. Super. Apr. 6, 2005) (emphasis added), citing *Makino U.S.A., Inc., v. Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 309-310 (1988); *see also First Sec. Bank, N.A. v. N.W. Airlines, Inc.*, 2001 WL 92175, at *5 (D.

---

[7] Nor could it possibly outweigh the more fulsomely recounted events, actions and transactions, and deceptive acts alleged to have occurred with respect to Evergreen's business in Georgia, Florida, Chicago, California, New York, North Carolina, and South Carolina, among other states named in the SAC.   "[I]f the significant contacts of the competing jurisdictions are approximately in the balance, the conduct in question cannot be said to have occurred primarily and substantially in Massachusetts."   *Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 45 (1st Cir. 2005).

Mass. Jan. 3, 2001) ("The plaintiffs, it is true, felt the impact of the loss in Massachusetts, but as *Makino* explains, that fact is not determinative."). In sum, "[w]hen 'virtually all the conduct that can be said to be unfair or deceptive' occurs outside the Commonwealth, there can be no Chapter 93A liability."   *Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 236 (1st Cir. 2003), quoting *Kuwaiti*, 438 Mass. at 475.

ORDER

For the foregoing reasons, defendants' motion to dismiss Count III of the Second Amended Complaint is <u>ALLOWED</u>, without prejudice.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE